# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 25-mj-197-GMH** |
| | : | |
| **RICHARD PAVEL, III** | : | |
| | : | |
| **Defendant.** | : | |

## MOTION TO SET CONDITIONS OF RELEASE

Defendant Richard Pavel, III ("Mr. Pavel"), by and through his attorneys, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Motion to Set Conditions of Release. In support of this Motion, counsel state the following.

### Introduction

Richard John ("RJ") Pavel, III is a 34-year-old man with no prior criminal history whatsoever. Mr. Pavel is a native of Crofton, Maryland, where he grew up in a household with his parents and sister. Mr. Pavel's father is retired from a lengthy career in federal service, most recently with the ATF and with a contractor for the Department of Agriculture. Mr. Pavel's mother is a mental health professional.[1] His

---

[1] From approximately 1976 through 1991, Mr. Pavel's mother worked in juvenile services for the State of Maryland, including as a juvenile probation officer.

sister is a federal law enforcement officer.[2] He graduated from Archbishop Spaulding High School in Severn, Maryland and went on to attend the University of the Arts in Philadelphia, from which he graduated with a degree in musical theatre. For more than a decade, Mr. Pavel has maintained employment across a number of disciplines. In addition to his freelance work as a performing artist in musicals, Mr. Pavel is a professional photographer and for many years worked as a contractor with George Washington University, where he taught courses for individuals wishing to serve as standardized patients for medical students. Mr. Pavel comes from a loving family. His family is committed to supporting him as this case progresses.

On September 2, 2025, the Government filed a Criminal Complaint charging Mr. Pavel with distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). The offense at issue is alleged to have occurred on June 5, 2025. On September 4, 2025, Mr. Pavel was arrested at his D.C. apartment. That same day, he made his initial appearance in this Court. At that hearing, the Government announced its intention to seek Mr. Pavel's detention in this matter. A detention hearing is scheduled for September 9, 2025 at 9:00 a.m.

While the Government has charged Mr. Pavel with a serious offense, Mr. Pavel submits that there is ample evidence to rebut the presumption of detention in

---

[2] Mr. Pavel's sister is not being proposed as a third-party custodian. She supports RJ in her *personal* capacity as his sister.

this case. An analysis of the 18 U.S.C. § 3142(g) factors reveals that there are conditions of release that can both reasonably assure Mr. Pavel's presence in court as required and the safety of the community. Accordingly, the Court should deny the Government's request for detention and order Mr. Pavel released pending trial, subject to conditions.

## Background

The Government's investigation into Mr. Pavel arises from its investigation into another individual, Justin Allred. *See United States v. Allred*, No. 25-cr-200-RCL (D.D.C.).[3] On June 30, 2025, the Government filed a criminal complaint charging Justin Allred with one count of distribution of child pornography. The Allred complaint alleges that in May 2025, Mr. Allred began exchanging messages on social media applications with an undercover officer ("UC") who posed as a father interested in the sexual exploitation of children. Mr. Allred expressed a sexual interest in children as young as three years old. On May 28, 2025, Mr. Allred sent the UC a series of videos depicting the sexual abuse of children, some of whom were infants and toddlers. On June 25, 2025, Mr. Allred and the UC made plans to watch child pornography together at Mr. Allred's home on July 1, 2025. Mr. Allred also requested that the UC share materials depicting the sexual abuse of the UC's

---

[3] In making the proffer that follows, Mr. Pavel relies on the Government's detention memorandum in Mr. Allred's case. *See Allred*, ECF No. 10.

purported son. In advance of the scheduled meeting, the Government obtained a criminal complaint against Mr. Allred.

On the date of the meeting, the UC reported to Mr. Allred's address, and members of law enforcement executed the outstanding arrest warrant. Agents seized and later searched Mr. Allred's cell phone. Agents also examined Mr. Allred's open laptop, which was connected to a hard drive containing child pornography and which displayed the social media accounts through which Mr. Allred communicated with the UC. Mr. Allred made his initial appearance on July 2, 2025. After requesting a continuance of his detention hearing due to an inability to locate a third-party custodian, Mr. Allred consented to detention.[4]

Agents continued their investigation by searching Mr. Allred's digital devices for evidence of child pornography offenses. As part of their search, agents reviewed social media and text message communications between Mr. Allred and others. Law enforcement discovered social media messages regarding child pornography between Mr. Allred and a man identified as Hershel Green. For example, law enforcement learned that on May 28, 2025, Mr. Green received more than 30 video files containing child pornography from Mr. Allred. Some of the files depicted the sexual abuse of prepubescent children. In July 2025, after the arrest of Mr. Allred,

---

[4] In the meantime, the Government obtained an indictment charging Mr. Allred with one count of distribution of child pornography.

members of law enforcement assumed control of one of Mr. Allred's social media accounts and reestablished contact with Mr. Green. On July 23, 2025, Mr. Green sent Mr. Allred's social media account seven files containing child pornography, including material depicting the abuse of prepubescent minors. In August 2025, Mr. Green advised the UC who was covertly operating Mr. Allred's social media account that he would be traveling from his home in D.C. to the Bay Area for work.[5] On August 22, 2025, the Government filed a criminal complaint charging Mr. Green with the May 28, 2025 receipt of child pornography from Mr. Allred and the July 23, 2025 distribution of child pornography to the UC who was operating Mr. Allred's social media account. *See United States v. Green*, No. 25-mj-161-MAU (D.D.C.). On August 24, 2025, members of law enforcement arrested Mr. Green in San Francisco as he prepared to board a flight back to the D.C. area. Mr. Green later made his initial appearance in the United States District Court for the Northern District of California. *See United States v. Green*, No. 3:25-mh-71026-MAG (N.D. Cal.). After detention hearings on August 28 and September 3, a Magistrate Judge of the Northern District of California ordered Mr. Green released on a $50,000 unsecured bond. Mr. Green's mother served as the surety. The Northern District of California stayed the release order through September 5, 2025 at noon, and the

---

[5] The Government confirmed that Mr. Green had scheduled travel to the Bay Area and that he was set to return to the D.C. area on August 24, 2025.

Government filed an appeal to the Chief Judge of this Court. *See United States v. Green*, ECF No. 6. The Government also requested that the Chief Judge of this Court extend the stay of the release order. It does not appear that the Chief Judge took any action on that request. The Government further requested that the Northern District of California extend the stay. That request was denied. Accordingly, it appears that Mr. Green is released pending the Government's appeal. A hearing in that case is set for September 9, 2025 before Chief Judge Boasberg.

In addition to Mr. Green, the Government identified Mr. Pavel as someone who had allegedly communicated with Mr. Allred. Mr. Pavel's contact information was saved in Mr. Allred's phone. According to the Government, on June 5, 2025, Mr. Pavel and Mr. Allred exchanged text messages in which Mr. Allred expressed a sexual interest in "taboo" materials. Mr. Allred then asked Mr. Pavel for his Telegram account name. The Government further alleges that it has reviewed Telegram messages from Mr. Allred's computer that were sent shortly after the June 5 text messages. Mr. Pavel allegedly told Mr. Allred that he was not interested in any material involving toddlers or those too young to consent. The Government also claims that Mr. Pavel and Mr. Allred exchanged messages about meeting in person that morning. Finally, the Government alleges that several hours after the initial text messages and Telegram messages, Mr. Pavel's account sent Mr. Allred's account several videos depicting minors engaged in sexual activity. The Government has not

6

alleged the number of videos it claims were sent from Mr. Pavel's account. However, according to the Government's recitation, only one video allegedly depicted prepubescent minors.

On the basis of the June 5, 2025, messages, the Government charged Mr. Pavel on September 2, 2025 with distribution of child pornography. Since his arrest at his apartment on September 4, Mr. Pavel has been housed at the D.C. Jail.

At this time, Mr. Pavel respectfully requests that this Court hold a detention hearing and order his release pending trial subject to strict conditions of home detention in the third-party custody of his father, Richard Pavel, Jr.

## **ARGUMENT**

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (Moss, J.) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

The Bail Reform Act of 1984 mandates that pretrial detention is permissible only where:

> After a hearing pursuant to the provision of 18 U.S.C. § 3142(f) the judicial officer finds that *no condition or combination of conditions* will reasonably assure the appearance of the person as required and the safety of any other person and the community.

18 U.S.C. § 3142(e) (emphasis added). "To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that

'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir.), *judgment entered,* 844 F. App'x 373 (D.C. Cir. 2021) (citing 18 U.S.C. § 3142(f)). "[W]hen the government seeks pretrial detention of an individual on the ground that he poses a risk of flight, the standard it must satisfy is a preponderance of the evidence." [6]*United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (citation omitted). In evaluating whether the Government has met its burden, courts consider the factors found at 18 U.S.C. § 3142(g), which include: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."

The Bail Reform Act ultimately commands that district courts impose the "least restrictive further condition, or combination of conditions, that . . . will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

---

[6] In Mr. Pavel's case, the Government has offered no specific evidence or argument that Mr. Pavel presents a risk of flight. Mr. Pavel is a lifelong resident of Maryland and the District of Columbia. His family is here. He has no history of failing to appear for court.

Even in cases like Mr. Pavel's where the Bail Reform Act creates a rebuttable presumption in favor of detention, that presumption operates merely to impose a burden of production on a defendant "to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). That burden of production, as this Court has recognized, is not heavy. *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016). Indeed, a defendant facing a rebuttable presumption of detention need only proffer "at least some evidence or basis to conclude that the case falls outside the congressional paradigm giving rise to the presumption." *Taylor*, 289 F. Supp. 3d at 63 (D.D.C. 2018) (internal citations omitted).

Here, Mr. Pavel has come forward with ample evidence to rebut the presumption of detention attached to the offense with which he is charged. Moreover, the Government has failed to proffer clear and convincing evidence of Mr. Pavel's danger to the community. Nor will the Government be able to meet its burden to show that there is no condition or combination of release conditions that can reasonably assure Mr. Pavel's presence in court as required and the safety of the community.  Mr. Pavel respectfully submits that releasing him to the third-party custody of his father, a retired career civil servant who has occupied positions of public trust, on conditions of home detention with restrictions of accessing internet-

capable devices will adequately assure the safety of the community and his presence in court as this case progresses.

### Mr. Pavel Has Rebutted the Presumption of Detention

The statutory presumption of detention poses no barrier to the release of Mr. Pavel. Mr. Pavel is 34 years old. He has no criminal history of any kind. He has never even before been arrested. This case involves an allegation that Mr. Pavel distributed several files containing child pornography on one single day three months ago. There is no allegation of any involvement with child pornography since that date. As discussed below, there is no evidence that Mr. Pavel is a person with a deep-rooted or compulsive interest in child pornography. For example, the Government has not alleged that Mr. Pavel moderated any forum dedicated to sharing child pornography, as is often seen in serious cases of child pornography distribution. There is no evidence that Mr. Pavel communicated with an undercover officer to encourage the production of child pornography. There is no evidence that Mr. Pavel sought to meet with anyone for the purpose of harming a child.

Mr. Pavel has significant ties to the community. Mr. Pavel has primarily lived in Maryland and the District of Columbia for his entire life. He has maintained employment as a freelance performing artist in musical theatre, as a professional photographer, and as a contractor with George Washington University. Mr. Pavel has proposed a robust release plan. If released, Mr. Pavel would *not* return to the

apartment he rented in D.C., which is where he was living both at the time of the alleged offense in June 2025 and at the time of his arrest last week. Instead, he would live with his parents at their home in Crofton, Maryland, a home in which the family has resided for more than 30 years.[7]

Mr. Pavel has proposed that he be released to the third-party custody of his father, Richard Pavel, Jr. Mr. Pavel, Jr. is retired from a career with the federal government. Mr. Pavel, Jr. began his career in public service in approximately 1972, when he began working as a clerk at a government self-service store. From there, Mr. Pavel, Jr. moved into positions related to government real estate. More recently, in 2017, Mr. Pavel, Jr. retired from the ATF, where he worked in adjudicating personnel security matters.[8] After his retirement, Mr. Pavel, Jr. continued to serve as a contractor with the ATF.  Before working at the ATF, Mr. Pavel, Jr. worked at NASA. Mr. Pavel, Jr. lives at the family home with his wife, a mental health professional in the psychotherapy field. There are no children in the home. Mr. Pavel, Jr. is willing to change the Wi-Fi password and to keep all of his and his wife's electronics under lock and key away from RJ. Indeed, Mr. Pavel, Jr. and his wife will be maintaining all of their electronics in the library of the home. The library

---

[7] Mr. Pavel's family has lived in the home since February 1993. His parents own the home.

[8] Mr. Pavel, Jr. worked with the ATF for over 20 years.

has been secured with a lock.[9] RJ will not be provided with a key to the room and will not be permitted to access it.

Mr. Pavel, Jr. recently purchased locks for the library in which electronics will be stored. Below is a photograph of the receipt for the purchase of the locks.[10]



Here is a photograph of one of the doors to the library before Mr. Pavel, Jr. affixed two locks to it:

---

[9] As reflected below, there are two doors to the library. *Both* doors are now secured with *two* locks.

[10] Counsel redacted the name of the Home Depot store manager as well as Mr. Pavel, Jr.'s financial information. Upon request, counsel will share an unredacted version with the Court and the Government.



The door is now secured.



The other door to the library has also been secured using locks.



Here is a photograph depicting Mr. Pavel, Jr. and his wife's electronics inside of the secured room:



RJ will have his own bedroom at the house. Mr. Pavel, Jr. will conduct regular inspections of RJ's bedroom. Below is a photograph of RJ's bedroom.



Mr. Pavel, Jr. will be present at the detention hearing to answer any questions the Court may have.[11] In light of these factors, Mr. Pavel submits that he has rebutted the presumption of detention.[12]

### The Nature and Circumstances of the Allegations and Weight of the Government's Proffer Pose No Barrier to Imposing Reasonable Conditions of Pretrial Release

Mr. Pavel does not dispute that the nature and circumstances of the alleged offense are serious. However, in light of the proposed conditions of release, this factor does not support detention. Additionally, the Government's allegations in this case are less egregious than in other cases involving the distribution of child

---

[11] Counsel have provided Mr. Pavel, Jr.'s information to Pretrial Services. Mr. Pavel, Jr., his wife, and his daughter will be present in court tomorrow.

[12] Notably, the conditions of release proposed by Mr. Pavel are stricter than those imposed by the Northern District of California in Mr. Green's case.

pornography. In this case, the Government alleges that Mr. Pavel distributed several files to Justin Allred on a *single day* in June. There is no evidence that Mr. Pavel maintained a large collection of such material. There is no evidence that Mr. Pavel shared any such materials over the dark web. There is no evidence that Mr. Pavel moderated any forum dedicated to sharing child pornography. Moreover, there is no allegation that Mr. Pavel physically harmed a child or made plans to meet with another person to engage in such conduct.

The Government's proffer makes clear that it was *Mr. Allred* who first expressed an interest in materials involving child sex abuse. Mr. Pavel allegedly told Mr. Allred that he had no interest in any material involving very young children. Moreover, the excerpted communications provided by the Government and the information in the Government's detention memorandum support an inference that Mr. Pavel and Mr. Allred met in a context completely devoid of any nexus to child pornography and that the topic arose as a result of Mr. Allred's interest. The Government has presented no evidence that Mr. Pavel engaged in any activity involving child pornography after June 5, 2025. Accordingly, while serious, the nature of the Government's allegations does not support Mr. Pavel's continued detention.

As to the second § 3142(g) factor, courts have recognized that "the weight of the evidence is the least important of the various factors." *United States v. Motamedi*,

767 F.2d 1403, 1408 (9th Cir. 1985). Additionally, courts "have cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of the defendant's dangerousness." *United States v. Taylor*, No. 1:21-cr-392-RCL-2, 2021 U.S. Dist. LEXIS 150500, at *14 (D.D.C. Aug. 11, 2021) (internal quotation and citation omitted). Furthermore, Congress has mandated that no provision of the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Counsel has not received any discovery in this matter. The Government has presented only a limited recitation of the alleged communications between Mr. Pavel and Mr. Allred. Accordingly, Mr. Pavel is not able to provide an assessment of the weight of the Government's evidence. Even assuming that the weight of the evidence of distribution of several files on one day three months ago is strong, that factor does not show that Mr. Pavel presents any identified and unmitigable risk of danger such that he should remain detained.

### Mr. Pavel's History and Characteristics Demonstrate That His Release Pending Trial Would Not Pose a Danger to the Community

RJ Pavel is 34 years old. As reflected in the Pretrial Services Report and as conceded by the Government, Mr. Pavel has no criminal history whatsoever. He is a college graduate. He has deep ties to the community. He has maintained employment across a number of professional spheres. He has a loving and supportive

family and has presented a robust release plan. Mr. Pavel's history and characteristics overwhelmingly support release. In arguing to the contrary, Government asks this Court to ignore Mr. Pavel's lifetime of positive behavior and focus instead on his limited alleged association with Mr. Allred. The Government misses the mark. Mr. Pavel is more than the conduct alleged in the Complaint. He is a son and brother, a hard worker, a person with no criminal history. This Court should order him released.

As for the final § 3142(g) factor, the Government bears the burden of proving by clear and convincing evidence that Mr. Pavel "presents an identified and articulable threat to an individual or the community[.]" *United States v. Munchel*, 991 F.3d 1273, 1282 (D.C. Cir. 2021); *see also Taylor*, 2021 U.S. Dist. LEXIS 150500, at *21 (noting that a district court must make a "forward-looking determination in its dangerousness assessment") (internal quotation and citation omitted). The Government has not met its burden. With respect to this factor, the Government first cites authority standing for the uncontested reality that child pornography offenses are serious and cause harm to victims. But that truth does not support any forward-looking analysis showing that Mr. Pavel, if released, would have any further involvement with child pornography. Instead, it represents additional argument on the nature of the charge, a wholly separate § 3142(g) factor. Next, the Government relies heavily on *United States v. Reiner*, 468 F. Supp. 2d 393

(E.D.N.Y. 2006), a case in which a United States District Judge for the Eastern District of New York overruled a release order issued by a United States Magistrate Judge and ordered detained a defendant charged with possession of child pornography. Despite the fact that the Bail Reform Act requires an "individualized assessment of [a defendant's] dangerousness," *United States v. Tanios*, 856 F. App'x 325, 326 (D.C. Cir. 2021), the Government wholly ignores the facts and circumstances at issue in *Reiner* and makes no effort to analogize them to Mr. Pavel's case. A careful analysis shows that *Reiner* is easily distinguishable. In *Reiner* Court rested its dangerousness finding on the following: (1) the defendant had been employed for 18 years as an elementary and middle school teacher; (2) the defendant possessed more than 500 still images and 60 videos of child pornography, including sadistic abuse; (3) the defendant possessed 2,000 stories about killing, sexually abusing, and even eating children; and (4) the defendant assisted an individual in Canada with the operation of a website devoted to young boys, slavery, and cannibalism. These factors, which demonstrate extremely disordered thinking and a glorification of murder, are simply *not* present in Mr. Pavel's case.

The Government also cites *United States v. Blankenship*, No. 1:08-0073, 2008 U.S. Dist. LEXIS 35433 (S.D. W. Va. Apr. 29, 2008), a decision in which a United States Magistrate Judge of the Southern District of West Virginia ordered detained a defendant charged with attempted distribution, attempted receipt, and possession

of child pornography. Again, the Government provides no analysis of the facts underlying that court's dangerousness-based decision not to set conditions of release. In *Blankenship*, the court relied upon the following factors in denying release: (1) the defendant possessed over 500 images of child pornography as well as a number of videos; (2) the defendant shared certain images with others; (3) the defendant was previously arrested for brandishing a weapon and threatening his brother; (4) the defendant threatened to kill his former wife if she went to the police regarding his involvement in child pornography, a circumstance that resulted in the issuance of a protective order. The *Blankenship* court was particularly concerned about the defendant's threats towards family members. Yet there is no allegation that Mr. Pavel has engaged in any violent conduct.

Finally, the Government cites *United States v. Doyle*, No. 2:07CR00004, 2007 U.S. Dist. LEXIS 98513 (W.D. Va. Apr. 11, 2007), a case in which a district judge affirmed a magistrate judge's order of detention for a defendant charged with receipt and possession of child pornography. Again, the Government offers no analysis of the authority on which it asks this Court to rely. In *Doyle*, the district court affirmed the order of detention because: (1) the defendant proposed his release to the home of his parents, where he had been living at the time of the alleged offenses; (2) the defendant's father was a long distance truck driver and rarely home; (3) the defendant's mother had serious health issues; and (4) the Government presented

evidence that the defendant sexually abused three young boys at his parents' residence – the same residence where officers found the child pornography that resulted in federal charges. Mr. Pavel's case could not be more different. Here, there is no allegation of hands-on offenses against children. Mr. Pavel was not living with his parents at the time of the alleged offense. And Mr. Pavel's parents are responsible and capable individuals with a history of public service.

In sum, the Government has not put forth evidence sufficient to establish that Mr. Pavel presents a concrete threat to the safety of the community such that it would not be appropriate to set conditions of release. Mr. Pavel, however, has come forward with a substantial release plan. Given his lack of criminal history, significant family support, and the other factors set forth in this Motion as well as those to be presented at the detention hearing, this Court should order Mr. Pavel released subject to conditions.

## **CONCLUSION**

RJ Pavel recognizes the seriousness of the allegations at issue in this case. Before September 4, Mr. Pavel had never even been arrested. He has every incentive to comply with any and all conditions of release the Court may set. This Court is presented with a 34-year-old man who is alleged to have engaged in the conduct at issue on one date three months ago. The Court also has before it a person with a strong work history and abundant family support. Releasing Mr. Pavel to the third-

party custody of his father with conditions of home detention, electronic location monitoring, and a prohibition on the use of internet-capable devices will amply satisfy the mandates of the Bail Reform Act.

Respectfully submitted,

S/_____
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland  20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 8, 2025, a copy of the foregoing was sent via ECF to the United States Attorney's Office for the District of Columbia.

s/_____
Michael E. Lawlor